1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   UNITED STATES OF AMERICA,          No. 2:20-cr-13 WBS

13                Plaintiff,

14        v.                            ORDER RE: MOTION TO SUPPRESS

15   MARIO GONZALEZ,

16                Defendant.

17

18                          ----oo0oo----

19        Defendant has moved to suppress all evidence found

20   during an inventory search of his truck following his arrest on

21   December 16, 2019.  (Docket No. 27.)  The court held a hearing on

22   the motion on February 2, 2021.

23   I.   Validity of the Arrest Warrant

24        Defendant was arrested pursuant to an arrest warrant

25   issued on October 30, 2019 by a California Superior Court judge

26   on a complaint charging defendant with the crime of felon in

27   possession of a firearm.  (Opp'n Ex. C (Docket No. 32-3).)  In

28   essence, defendant argues that the underlying warrant was invalid

because it was not supported by probable cause.  Defendant argues, in effect, that the police report attached to the warrant application was an insufficient basis for a finding of probable cause because the police did not verify that it was in fact the defendant who made the August 25, 2019 phone call to police to report that his ex-wife's Ruger pistol was stolen and that he had unlawfully possessed the gun.[1]

The court rejects this argument.  In assessing the validity of a warrant, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citation and internal punctuation omitted).  Defense counsel merely speculates that defendant did not make the August 25, 2019 call because it would not make sense for someone to confess to a crime.  He provides no evidence that someone else made the phone call.  Further, police followed up on the phone call by contacting defendant's ex-wife, who told police

---

[1]   In reply and at oral argument, defendant also argued that the warrant was deficient because it is not clear what materials were reviewed by the judge who issued it and because the San Joaquin District Attorney's Office generally does not submit sworn affidavits in support of arrest warrant applications.  However, the court finds credible the declaration produced by the government (see Pl.'s Ex. F (Docket No. 41)) in which a clerical supervisor at the District Attorney's office states that (1) the office's general procedure to obtain a warrant is to send a packet containing the criminal complaint, the related police report, and the request for a warrant to the reviewing judge, and (2) she was confident that this practice was followed in this case, though she did not have any specific memory of this case.  Indeed, defense counsel conceded at oral argument that this practice was likely followed in this case. Defendant has produced no authority suggesting that this practice of obtaining a warrant using a police report, rather than a sworn affidavit, is constitutionally defective.

that she had received a voicemail from the defendant indicating that one of her guns had been stolen.  Police also contacted the new owner of the couple's former house, who confirmed that defendant had taken a safe from the house and that he had been told by defendant's ex-wife that there were two guns in the safe. Finally, police ran a firearm check which indicated that two firearms were registered to defendant's ex-wife, including a Ruger pistol.[2]

In light of both the lack of evidence suggesting the defendant did not make the August 25, 2019 phone call and the police's investigation which corroborated the facts of that phone call, the police reasonably inferred that defendant was the caller.  Moreover, the facts recited in the phone call and the subsequent investigation by police were recounted in Officer Wise's August 25, 2019 police report, which was almost certainly provided in the materials provided to the reviewing judge in the warrant application.  Under these circumstances, there was a substantial basis for the state court judge to find probable cause to issue the warrant.[3]  See Gates, 462 U.S. at 238-39.

Even if the showing of probable cause to support the arrest warrant were insufficient, suppression would be

---

[2]    Because the phone call in this case was not anonymous and was also corroborated, Florida v. J.L., 529 U.S. 266 (2000), is clearly distinguishable and does not warrant suppression.

[3]    Similarly, given the facts of the August 25, 2019 phone call and the subsequent police investigation, the court agrees with the government that there is substantial evidence that defendant removed his wife's gun from the safe and thus personally possessed it, regardless of whether defendant's divorce decree prohibited him from disposing of the gun.

1   inappropriate here.  In <u>United States v. Leon</u>, 468 U.S. 897

2   (1984), the Supreme Court held that when an officer acts "in the

3   objectively reasonable belief that [his] conduct did not violate

4   the Fourth Amendment," evidence seized under the authority of a

5   warrant that is later invalidated should not be suppressed.[4]  <u>Id.</u>

6   at 918.

7          While it recognized that each inquiry would be fact-

8   specific, the <u>Leon</u> court enumerated four situations in which

9   reliance on an invalidated warrant could not be deemed to be

10  objectively reasonable: (1) the affiant knowingly or recklessly

11  misleads the magistrate with false information or material

12  omissions; (2) the magistrate "wholly abandoned his judicial

13  role;" (3) the affidavit is "so lacking in indicia of probable

14  cause as to render official belief in its existence entirely

15  unreasonable," or (4) the warrant itself is facially deficient.

16  <u>Id.</u> at 923; <u>see</u> <u>id.</u> at 922 n.23.  Nothing close to any of those

17  circumstances existed here.

18          In the court's view, Officer Wise's August 25, 2019

19  report, detailing the August 25, 2019 phone call and the

20  subsequent investigation, provides sufficient evidence for a

21  competent judge to find probable cause, and given the phone call

22  and investigation, a reasonable officer could believe that the

23  arrest warrant was valid.  Accordingly, the court will deny the

24  motion to suppress to the extent defendant argues the arrest

25  warrant was invalid.

26  _____

27      [4]   While <u>Leon</u> specifically applied in the context of a
    search warrant, the court sees no reason why the good faith
    exception would not apply generally in the context of an arrest
28  warrant.

1  II.   Impounding and Search of Truck

2          Defendant next argues that the police violated the
3  Fourth Amendment when they impounded his truck following his
4  arrest.  Under the community caretaking doctrine, an officer may
5  impound vehicles that "jeopardize public safety and the efficient
6  movement of vehicular traffic," though whether impoundment is
7  allowed "depends on the location of the vehicle and the police
8  officers' duty to prevent it from creating a hazard to other
9  drivers or being a target for vandalism or theft."  South Dakota
10 v. Opperman, 428 U.S. 364, 369 (1976); Miranda v. City of
11 Cornelius, 429 F.3d 858, 863 (9th Cir. 2005); Ramirez v. City of
12 Buena Park, 560 F.3d 1012, 1025 (9th Cir. 2009) (quoting
13 Miranda).

14         Further, "[a] lawfully impounded vehicle may be
15 searched for the purpose of determining its condition and
16 contents at the time of impounding."  United States v. Caseres,
17 533 F.3d 1064, 1074 (9th Cir. 2008) (citing Opperman, 428 U.S. at
18 376).  The parties do not dispute that if the police's
19 impoundment of the truck was reasonable under the Fourth
20 Amendment, the "inventory search" of the vehicle pursuant to that
21 impoundment was also reasonable under the Fourth Amendment.

22         Here, defendant argues that the police had no reason to
23 impound the truck because the truck was parked legally, the truck
24 was not connected to the arrest warrant in any way, the officers
25 had no reason to fear liability for damage to the truck if it was
26 left unattended, and because defendant told the officers that he
27 could call AAA or family or friends to remove the vehicle.

28         Defendant relies primarily on United States v. Maddox,

5

614 F.3d 1046 (9th Cir. 2010) to argue that the impoundment was
unreasonable.  In <u>Maddox</u>, police pulled over a driver for
reckless driving and eventually determined that, among other
things, the driver's license had expired and the car had expired
tags.  A search of the car resulted revealed a handgun and what
appeared to be drugs in the car.  The court ultimately determined
that the inventory search of the car was invalid because the
impoundment was improper, noting that the car was not abandoned,
impeding traffic, or threatening public safety or convenience,
and that because the defendant offered to have his friend move
the vehicle, the officer did not sufficiently consider
alternatives before impounding the car.  <u>Id.</u> at 1049-50.

      Defendant reads too much into this case, however.  As
the government correctly points out, <u>Maddox</u> hinged on the
officers' violation of state law.  <u>See id.</u> at 1050.  The <u>Maddox</u>
panel noted that Washington state law provided that police may
impound a vehicle only if (1) the officer has probable cause to
believe that the vehicle was stolen or used in the commission of
a felony, (2) the impoundment is pursuant to the police's
community caretaking function provided "neither the defendant nor
his spouse or friends are available to move the vehicle," or (3)
where the driver has committed one of the traffic offenses for
which the Washington legislature had specifically authorized
impoundment.  The <u>Maddox</u> court found that there was no probable
cause to believe the car was stolen given the officer's running
of a check on the VIN for the car and the defendant's assertion
of ownership.  The court further noted that reckless driving and
driving with a suspended license were not offenses for which the

6

Washington legislature allowed impoundment.  Finally, the court held that because the defendant offered to have a friend move the car, the impoundment violated Washington law and the subsequent search was not a valid inventory search.  Id.

Here, there is no claim by defendant that the impounding of his truck violated state law.  Indeed, California Vehicle Code § 22651(h)(1) specifically provides that a vehicle may be impounded where the driver is taken into custody pursuant to an arrest.[5]  See Caseres, 533 F.3d at 1074.  Further, several Ninth Circuit cases make clear that under the community caretaker exception, a desire to avoid theft or vandalism is a permissible reason to impound a car.  See, e.g., United States v. Torres, 828 F.3d 1113, 1120 (9th Cir. 2016) (impoundment permissible because, inter alia, the officers had "a reasonable interest in preventing the vehicle from being a target for vandalism or theft in the parking lot of an apartment complex" where neither the defendant nor the unlicensed passenger lived); Ramirez, 560 F.3d at 1025 (impoundment of car at drugstore parking lot was permissible because leaving it "would have made it an easy target for vandalism or theft"); accord Caseres, 533 F.3d at 1075 (impoundment of vehicle legally parked two houses away from defendant's home was impermissible because the likelihood that the vehicle would be stolen or vandalized as a result of the arrest was no greater than if the officers had not arrested him); Miranda, 429 F.3d at 864 (impoundment of vehicle parked in

---

[5]    The parties do not dispute that the crime of felon in possession allows police to take a suspect into custody, in contrast to the offenses at issue in Maddox.

7

defendant's driveway was impermissible under the community

caretaker doctrine).[6]

The officers' decision to impound the truck appears

even more reasonable here where the defendant expressed multiple

times during his arrest that he wanted the truck moved to avoid

theft by the owner of the property where it was parked.  Indeed,

the defendant even claimed that the owner had effectively stolen

several of his cars by having them towed away, and had contacted

the police for this reason.  Defendant's contention that the

officers could not impound the truck to avoid theft or vandalism

is repudiated by Ninth Circuit case law and undermined by

defendant's own statements during his arrest.

Further, there appears to be no requirement under

California law that law enforcement pursue alternatives to

impoundment before impounding a care, in contrast to Washington

law.  Multiple courts have also made clear that officers are not

required to provide the defendant his preferred method of

---

[6]    At least one federal appellate decision outside the
Ninth Circuit has held that the need to protect property from
theft or vandalism is not a proper consideration under the
community caretaker doctrine, explaining that the police have no
duty to protect the property of individuals from private injury.
See United States v. Duguay, 93 F.3d 346, 352-53 (7th Cir. 1996).
However, several cases have distinguished the facts of that case.
See, e.g., United States v. Smith, 522 F.3d 305, 311-12 (3d Cir.
2008) (noting that in Duguay, the defendant's girlfriend, who had
driven the vehicle to the place of arrest, and the defendant's
brother, who was present at the arrest, could have moved the
vehicle).  Further, similar to the Washington state law at issue
in Maddox, in Duguay, Illinois state law provided that
impoundment was permissible only where the arrestee was not able
to provide for immediate removal of the vehicle.  Duguay, 93 F.3d
at 353.

removing the vehicle, absent any requirement under state law, if no one is immediately available to remove the vehicle.  See, e.g., Colorado v. Bertine, 479 U.S. 367, 373-74 (1987) (police were not required to consider alternatives to towing and impoundment because the reasonableness of any governmental activity does not necessarily turn on the existence of less intrusive means); United States v. Lyle, 919 F.3d 716, 731 (2d Cir. 2019) (police not required to grant defendant's request to contact girlfriend to move car instead of towing it)); United States v. Cartwright, 630 F.3d 610, 615 (7th Cir. 2010) (Fourth Amendment did not require police to consider alternatives to impoundment suggested by defendant where no one was present and willing to assume responsibility for the car); but see Maddox, 614 F.3d at 1050 (police were required to consider alternatives to impoundment where state law prohibited impoundment under community caretaker function if driver could make arrangements with family or friends); Duguay, 93 F.3d at 353-54 (impoundment improper because, inter alia, two other individuals on the scene were available to remove the car and state law allowed impoundment only where the arrestee was not able to provide for immediate removal of the vehicle).

It is true that defendant made multiple requests to contact AAA to tow his truck, and he eventually suggested arranging for his father or friends, who were purportedly nearby, to move his truck to avoid impoundment.  There was no telling how long it would have taken for the AAA, defendant's father or any of his friends to arrive, or whether any of them would agree to take custody of the truck at all.  The officers were not required

by the Fourth Amendment to wait around to find out, given that California law does not require the consideration of such alternatives.  Presumably, they had more important official duties to perform.  Accordingly, the impoundment of defendant's truck and the subsequent inventory search were permissible.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Docket No. 27) be, and the same hereby is, DENIED.

Dated:  February 9, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10